UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

EDWARD H. FLINT                                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 3:15CV-688-CRS

MARY C. NOBLE *et al.*                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Defendants, by counsel, filed a motion to dismiss (DN 10) and a motion for sanctions (DN 11). Plaintiff Edward H. Flint, *pro se*, filed responses (DNs 16 & 17), Defendants filed replies (DNs 18 & 19), and Plaintiff filed a sur-reply[1] (DN 26). The motions are ripe for determination. Because Plaintiff's amended complaint[2] is frivolous, baseless, and abusive, it will be dismissed, and sanctions will be imposed.

### I. SUMMARY OF CLAIMS AND ARGUMENTS

In the amended complaint, Plaintiff names the following Justices of the Kentucky Supreme Court[3] as Defendants in their individual capacity: (1) Mary C. Noble, (2) Bill Cunningham, (3) Michelle M. Keller, (4) David Allen Barber, (5) Daniel J. Venters, (6) John S. Reed, (7) Norman E. Harned, (8) John D. Minton, Jr., and (9) Lisabeth Hughes Abramson. None of the allegations in the complaint are specific to any named Justice. Rather, Plaintiff specifies that his allegations pertain to "one or more of the Defendants."

---

[1] Plaintiff titled this document as "Plaintiff Response to Defenadants Support of Defendant Motion to Dismiss." Because the document is a reply to a reply (otherwise called a sur-reply), the Court construes it accordingly.

[2] Plaintiff's amended complaint (DN 7) is identical to the original complaint (DN 1) except that the amended complaint names two additional Defendants. The Court, therefore, concludes that the amended complaint supplants the original complaint.

[3] Defendants identify Defendants Reed and Harned as "Special Supreme Court Justices" (DN 10).

Plaintiff reports that he has filed "a number of lawsuits in the State of Kentucky and some has made their way to the Kentucky Supreme Court, where each Justice votes individuals on each decisions."  He alleges that "one or more of the Defendants" (1) "despised" him because he "had sued a number of Kentucky judges, for being corrupt and for violating the Constitutions, statutes and Court rules"; (2) caused him "great mental stress"; (3) "took advantage" of him for being *pro se* and because of his "age and lack of legal education"; (4) discriminated against him because of their "odium of him" by "conspiring with others"; (5) were "bias, because of their hatred of the Plaintiff and . . . should have recused themselves"; (6) deprived him of a jury trial; (7) "created misconduct of their office" because of "their disgust of Plaintiff"; (8) "conspired with others on how to best handle the cases to make sure Plaintiff Flint lost the cases and harm Flint"; (9) "had a conflict of interest in these cases"; and (10) "because of their hate of Plaintiff . . . took no steps or made any effort, to do the right thing" . . . and "discriminated against him by not proceeding with the cases."  Based on these allegations, Plaintiff contends that Defendants' actions caused him "great mental stress" and violated 18 U.S.C. § 241, 18 U.S.C. § 242,[4] 42 U.S.C. § 1985, 28 U.S.C. § 1443, 42 U.S.C. § 1981, and 42 U.S.C. § 1983.

As relief, Plaintiff seeks compensatory and punitive damages and a jury trial and demands the following injunctive relief:  (1) that Defendants be "removed as a judge in Kentucky and never allowed to run for an elected office again"; (2) that Defendants be disbarred from practicing law; (3) that this Court impose "the maximum sentence on each Defendant" for violation of his civil rights; (4) that the Court reports to the U.S. Department of Justice the

---

[4] Plaintiff actually alleges a violation of 28 U.S.C. § 242, but no such statute exists. The Court presumes that Plaintiff intended to allege a violation of 18 U.S.C. § 242 and will construe it as such.

actions of Defendants "for possible prosecution"; (5) that "[a]ny and all retirement benefits that may be due any guilty Defendant, from being a judge, is taken away from them forever"; and (6) that Plaintiff be awarded costs and all other relief to which he may be entitled.

In their motion to dismiss, Defendants seek dismissal on the bases of judicial immunity, insufficient process, and insufficient service of process.

In his response, Plaintiff primarily rehashes the allegations he made in his complaint.  He claims that "Defendants at times didn't have jurisdiction, but wanted the power, like Hitler had. Plaintiff Flint knows how Hitler operated he lived through it and it is something he will never forget and fight at all cost."  He also claims that the "devil would have received better treatment in the Kentucky Supreme Court than Plaintiff Flint did" and that "[t]hese cases were handled by the Defendants in the style of Judge Roy Beam, who did as he pleased, many years ago in West Texas."

In reply, Defendants argue that Plaintiff does not rebut the law in support of dismissal on the three bases they alleged.  Instead, claim Defendants, "the Plaintiff merely repeats verbatim the claims raised in his Amended Complaint, quotes the Bible and Wikipedia, and resorts to slandering the Defendants."

Finally, in his sur-reply, Plaintiff claims that "[a]pparently the Defendants don't believe in the bible and God and resent Plaintiff referring to them."  He also claims that "[t]here is no law by Congress that gives any judge immunity.  The Defendant cited Stump v. Sparkman . . . and other cases.  These cases are court made laws and under the Constitution only Congress can make laws."

## II. ANALYSIS

In deciding a motion to dismiss under Rule 12(b)(6),[5] the Court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To meet this plausibility standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  A complaint that merely offers "'naked assertions' devoid of 'further factual enhancement'" does not satisfy the Federal Rules of Civil Procedure.  *Id*. (quoting *Twombly*, 550 U.S. at 557).  Further, "the allegations of a complaint drafted by a *pro se* litigant are held to less stringent standards than formal pleadings drafted by lawyers in the sense that a *pro se* complaint will be liberally construed in determining whether it fails to state a claim upon which relief could be granted." *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). Finally, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

"[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  Absolute judicial immunity is overcome only when a judge engages in non-judicial actions or when the judge's actions, though judicial in nature, are taken in "the clear absence of all jurisdiction." *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997) (citing *Mireles v.*

---

[5] Defendants also seek dismissal under Rule 12(b)(4) and (b)(5), for insufficient process and insufficient service of process, respectively.  Because the Court concludes that dismissal under Rule 12(b)(6) is appropriate, it need not address Defendants' two other claims.

*Waco*, 502 U.S. at 11-12).  Whether an action is judicial or non-judicial "depends on the nature and function of the act, not the act itself."  *Ireland v. Tunis*, 113 F.3d 1435, 1440-41 (6th Cir. 1997) (quoting *Mireles v. Waco*, 502 U.S. at 13) (internal quotation marks omitted).  Courts examine two factors in performing this functional analysis.  *Id*. at 1441.  Courts must first determine whether the act "'is a function normally performed by a judge.'"  *DePiero v. City of Macedonia*, 180 F.3d 770, 784 (6th Cir. 1999) (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).  Second, "courts must assess whether the parties dealt with the judge in his or her judicial capacity."  *Id.*  Furthermore, a judge acts in "clear absence of all jurisdiction" only if the matter acted upon is clearly outside the subject matter of his court.  *Ireland v. Tunis*, 113 F.3d at 1441.  Acting in error, maliciously, or in excess of his authority is not enough.  *Stump*, 435 U.S. at 355.

Here, the alleged wrongful actions by Defendants involve their handling of Plaintiff's cases on appeal, a function normally performed by justices.  Plaintiff clearly dealt with all Defendants in their judicial capacities, and the amended complaint alleges no facts suggesting that any Defendant engaged in non-judicial action.  An act "does not become less judicial by virtue of an allegation of malice or corruption of motive."  *Sparks v. Character & Fitness Comm. of Ky.*, 859 F.2d 428, 432 (6th Cir. 1988) (quoting *Forrester v. White*, 484 U.S. 219, 227 (1988)).  Nor has Plaintiff stated any facts to show that any Defendant acted in the clear absence of all jurisdiction.  Plaintiff reports in his amended complaint that he has filed "a number of lawsuits in the State of Kentucky and some has made their way to the Kentucky Supreme Court, where each Justice votes individuals on each decisions."  While Plaintiff states in his response to the motion to dismiss that "Defendants at times didn't have jurisdiction," the Court is not required to accept

legal conclusions devoid of any factual support. *See Iqbal*, 556 U.S. at 678. Accordingly, Defendants are entitled to absolute judicial immunity to any claims against them.

Additionally, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. As all of the alleged actions by the Defendant Justices were taken in their judicial capacity and Plaintiff does not allege that a declaratory decree was violated or that declaratory relief was unavailable, Plaintiff is not entitled to injunctive relief under § 1983.

Further, sections 241 and 242 of Title 28 of the United States Code are criminal statutes that do not create a private right of action. *See United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003) ("[T]he district court properly dismissed Oguaju's claim pursuant to 18 U.S.C. §§ 241 or 242 because Oguaju has no private right of action under either of these criminal statutes."). Further, "[i]t is well settled that the question of whether and when prosecution is to be instituted is within the discretion of the Attorney General." *Powell v. Katzenbach*, 359 F.2d 234, 235 (D.C. Cir. 1965); *see also Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam) ("Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241-242.").

Plaintiff's conspiracy claim under 28 U.S.C. § 1443 must be dismissed because § 1443 is a federal removal statute, not a cause of action under which to bring a claim. Plaintiff's claim under 42 U.S.C. § 1981 fails because he alleges neither a contract nor racial discrimination. *See, e.g.*, *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987) ("Although § 1981 does not itself use the word 'race,' the Court has construed the section to forbid all 'racial' discrimination in the making of private as well as public contracts.") (citation omitted). Similarly, his 42 U.S.C. § 1985 claim fails because he has not alleged that "the conspiracy was motivated by racial, or

6

other class-based, invidiously discriminatory animus." *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999).

Moreover, even if the Court were to consider Plaintiff's demands for various forms of injunctive relief, the claims for injunctive relief also fail. With regard to Plaintiff's demand that that Defendant Justices be removed from their judicial positions, this Court has no jurisdiction to take such action. The power to do so lies with Kentucky's Judicial Conduct Commission and the Supreme Court of Kentucky. *See Gormley v. Judicial Conduct Comm'n*, 332 S.W.3d 717, 725 (Ky. 2011) ("Section 121 of the Kentucky Constitution authorizes the [Judicial Conduct Commission] to . . . remove, a judge or justice for good cause, with judicial review directly to the [Kentucky] Supreme Court."). This Court likewise has no jurisdiction to disbar a state judge, as Plaintiff requests. *See Theard v. United States*, 354 U.S. 278, 281 (1957) ("The two judicial systems of courts, the state judicatures and the federal judiciary, have autonomous control over the conduct of their officers, among whom . . . lawyers are included."); *In re Baumgartner*, 123 F. App'x 200, 203 (6th Cir. 2005) (recognizing that the state has jurisdiction to disbar an attorney and that the state's power of disbarment cannot be upset by federal review). Finally, as to Plaintiff's demand that this Court impose "the maximum sentence" on Defendants, incarceration is not available as relief to Plaintiff in this civil action, and the Court does not have the power to direct that criminal charges be filed against anyone. *See Peek v. Mitchell*, 419 F.2d 575, 577-78 (6th Cir. 1970) (finding that United States attorneys cannot be ordered to prosecute because the decision is within their discretion); *Fleetwood v. Thompson*, 358 F. Supp. 310, 311 (N.D. Ill. 1972) (finding that the "plaintiff's complaint fails to state a claim upon which relief can be granted in that none of the United States Attorneys can be compelled to investigate or prosecute alleged criminal activity").

For these reasons, **IT IS ORDERED** that Defendants' motion to dismiss (DN 10) is **GRANTED**.

### III.  SANCTIONS

In their motion for sanctions, the Defendant Justices report that Plaintiff has a long history of filing frivolous, vexatious lawsuits against federal and state judges.  They advise that the Court has previously imposed sanctions against Plaintiff and request that the Court again impose appropriate sanctions to deter future frivolous, harassing, and duplicative lawsuits from Plaintiff.

In response, Plaintiff argues that "[s]anctions should never be considered until a trial has been held and then the evidence shows that the complaint was frivolous."  Plaintiff further states:

> In 2007 the Holy Spirit told the Plaintiff that God wanted the Devil out of the Justice System and wanted the Plaintiff to file a number of lawsuits, to get him out.  The Holy Spirit told Flint, that he the Holy Spirit would tell Flint how to write the pleadings and tell him what to say in court.  The Holy Spirit would also teach Flint about the law needed.  Flint by his action has been and will continue doing God's will.  Flint has obeyed the courts rules in every case.

Plaintiff also resorts to name-calling by suggesting similarities between the Nazis and "corrupt judges."  He argues that "[t]o grant the Defendants motion would be giving every judge in Kentucky the right to violate the Constitution, any and all laws and rules and rule as they please, on any or all issues, when a judge is to rule by laws and not opinions or feelings."

In reply, the Defendant Justices assert that Plaintiff's response attempts to support his claims and arguments with nothing more than insults and disparagement against Defendants.  They further assert that the claims raised in the amended complaint are nearly identical to previous frivolous cases filed by Plaintiff against members of the judiciary and that Plaintiff

cannot demonstrate how this action differs from his prior cases that were dismissed on grounds of judicial immunity.

In considering whether sanctions should be imposed, the Court has reviewed the prior suits filed by Plaintiff against judges.  In one of Plaintiff's earlier actions, *Flint v. Whalin*, Civil Action No. 3:11-cv-316-JGH, by Memorandum Opinion and Order entered June 21, 2011 (DN 6), the late Senior Judge John G. Heyburn II documented Plaintiff's lengthy history of frivolous litigation against state and federal judges in this Court and found that the "submission of frivolous and duplicative lawsuits serves no legitimate purpose, places a tremendous burden on this Court's limited resources, and deprives other litigants with meritorious claims of the speedy resolution of their cases."  Therefore, Judge Heyburn issued the following warning to Plaintiff:

> **Flint is WARNED that he will be sanctioned in the amount of $700.00 per suit should he file any additional lawsuits in this Court against federal or state judges on the grounds that he believes they were biased against him, made incorrect rulings, or otherwise improperly oversaw any of his cases. Additionally, filing any additional such lawsuits could result in the imposition of additional sanctions, including the imposition of filing restrictions.**

This warning, however, did not deter Plaintiff as he filed a subsequent lawsuit against a state court judge.  *See Flint v. McDonald*, Civil Action No. 3:12-cv-613-CRS.  By Memorandum Opinion and Order entered January 18, 2013 (DNs 10 & 11), the undersigned held that Plaintiff's suit plainly fell within the terms of Judge Heyburn's warning, as it was a lawsuit against a state judge on the grounds that the state judge was biased against him, made incorrect rulings, and improperly oversaw a hearing in the case.  Finding that the filing of the subsequent action constituted bad faith, the undersigned imposed a $700 sanction, double the cost of the filing fee

at that time, and issued the following warning to Plaintiff to ensure that he was aware that any future frivolous lawsuits could result in even more severe sanctions:

> [T]he plaintiff, Edward H. Flint, is **WARNED** that if he files any additional lawsuits in this Court against federal or state judges on the grounds that he believes they were biased against him, made incorrect rulings, or otherwise improperly oversaw any of his cases, **he will face further sanctions, which could include, but are not limited to, monetary sanctions of more than $700 or the imposition of filing restrictions[.]**

Again not deterred by Judge Heyburn's warning or the sanctions imposed by the undersigned, Plaintiff filed an action against a federal judge. *See Flint v. McKinley*, Civil Action No. 4:15-cv-130-GNS. There, the Court found that Plaintiff acted in bad faith in bringing the action against a federal judge despite two earlier warnings by the Court. Judge Greg N. Stivers imposed a sanction against Plaintiff of $800, an amount double the current cost of the fee for filing a civil action.

Plaintiff also continued to file frivolous and meritless suits against state court judges. In *Flint v. Burkman*, Civil Action No. 3:15-cv-439-JHM, Chief Judge Joseph H. McKinley, Jr., imposed an $800 sanction against Plaintiff and further imposed a prefiling restriction on Plaintiff due to his history of filing frivolous and burdensome lawsuits targeting state and federal judges. In *Flint v. Acree*, Civil Action No. 3:15-cv-588-DJH, Judge David J. Hale, by Memorandum Opinion and Order entered December 18, 2015, imposed sanctions against Plaintiff in the amount of $800; barred Plaintiff from filing any new action until he paid all sanctions; and imposed a prefiling restriction on Plaintiff following payment of all sanctions imposed. In *Flint v. Willett*, Civil Action No. 3:15-cv-351-DJH, Judge Hale imposed an $800 sanction and again imposed a prefiling restriction on Plaintiff. Finally, in *Flint v. Chauvin*, Civil Action No. 3:15-cv-381-DJH, Judge Hale again imposed an $800 sanction and a prefiling restriction on Plaintiff.

10

This Court agrees with the reasoning in the prior Orders imposing sanctions.  Once again, Plaintiff has brought a frivolous action against judges after repeated warnings against doing so.  Sanctions are therefore appropriate.  *See Halliburton v. United States*, 59 F. App'x 55, 57 (6th Cir. 2003) ("Pursuant to its inherent powers, a court in the Sixth Circuit may impose sanctions to curb vexatious, bad faith litigation if the claims are meritless, the litigant knew or should have known that the claims are meritless, and the claims were filed for an improper purpose.") (citing *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512, 519 (6th Cir. 2002)).  Accordingly, **IT IS HEREBY ORDERED** that Defendants' motion for sanctions (DN 11) is **GRANTED**.

**The Court will impose a sanction against Plaintiff in the amount of $800 in the present action.**  Further, a review of this Court's records reveals that Plaintiff has failed to pay the $700 sanction previously imposed by the undersigned; the $800 sanction previously imposed by Judge Stivers; the $800 sanction previously imposed by Chief Judge McKinley; and the three $800 sanctions previously imposed by Judge Hale.  Plaintiff, therefore, remains obligated to pay the prior $4,700 in sanctions in addition to the $800 incurred here.  "To make the sanction effective and thereby protect the processes of a court from abuse, a litigant against whom . . . sanctions have been imposed must comply with those sanctions before being permitted to pursue new matters in that court."  *Schiff v. Simon & Schuster, Inc.*, 766 F.2d 61, 62 (2d Cir. 1985) (per curiam); *see also Hyland v Stevens*, 37 F. App'x 770, 771-72 (6th Cir. 2002) ("[Plaintiff] is hereby barred from filing any new civil matter or appeal therefrom in this court or any court subject to this court's jurisdiction until he has paid the sanction imposed in [a previous case].");  *Hymes v. United States*, 993 F.2d 701, 702 (9th Cir. 1993) ("Courts have inherent power to dismiss actions for nonpayment of costs in prior actions.  This power also extends to a litigant's

11

failure to pay previously imposed sanctions."). In accord with the previous orders imposing sanctions discussed above, this Court will also impose the following requirement on Plaintiff:

> **Flint is barred from filing any new action in this Court until he has paid the $800 sanction imposed in this case; the $800 sanction imposed in *Flint v. Chauvin*, Civil Action No. 3:15-cv-381-DJH; the $800 sanction imposed in *Flint v. Willett*, Civil Action No. 3:15-cv-351-DJH; the $800 sanction previously imposed in *Flint v. Acree*, Civil Action No. 3:15-cv-588-DJH; the $800 sanction previously imposed in *Flint v. Burkman*, Civil Action No. 3:15-cv-439-JHM; the $800 sanction previously imposed in *Flint v. McKinley*, Civil Action No. 4:15-cv-130-GNS; the $700 sanction previously imposed in *Flint v. McDonald*, Civil Action No. 3:12-cv-613-CRS; and any other sanctions imposed by the Court. The Clerk of Court shall not accept for filing any future lawsuits by Plaintiff until he pays all sanctions imposed on him.**

Plaintiff shall pay the outstanding sanctions to the Clerk of the Court, U.S. District Court for the Western District of Kentucky, 601 W. Broadway, Louisville, Kentucky 40202. **Plaintiff may not pursue any new action in this Court until the sanctions have been paid**.

Finally, review of the Court's records reveals that since April 20, 2015, Plaintiff has filed nine cases in this Court, six of them against judges. Due to Plaintiff's continued pattern of filing abusive and vexatious lawsuits in this Court and his attempt to ignore the previously imposed sanctions and repeated warnings of additional sanctions, this Court imposes the same prefiling restriction it imposed on Plaintiff in *Flint v. Acree*, Civil Action No. 3:15-cv-588-DJH; *Flint v. Willett*, 3:15-cv-351-DJH; and *Flint v. Chauvin*, 3:15-cv-381-DJH:

> **Edward H. Flint shall file a motion seeking permission from the Court before filing any new action in this Court. Flint's motion shall demonstrate that the claim or claims he intends to assert are not frivolous and that the suit is not brought for an improper purpose. He must attach his proposed complaint to the motion.**

*See Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998) ("There is nothing unusual about imposing prefiling restrictions in matters with a history of repetitive or vexatious

litigation."); *Ortman v. Thomas*, 99 F.3d 807, 811 (6th Cir. 1996) (permanently enjoining

plaintiff from filing action based on particular legal and factual claims "without first obtaining

certification from a United States Magistrate Judge that the claim or claims asserted are not

frivolous and that the suit is not brought for any improper purpose").

      The Court will enter a separate Order consistent with this Memorandum Opinion and

Order.

Date:  May 24, 2016

**Charles R. Simpson III, Senior Judge**
**United States District Court**

cc:    Plaintiff, *pro se*
          Counsel of record
4411.005

13